IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stokely-Van Camp, Inc.<br><br>   Plaintiff,<br><br> v.<br><br>DuraCap Labs, LLC and<br>Active Sports Distribution<br><br>   Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Stokely-Van Camp, Inc., for its Complaint against Defendants DuraCap Labs, LLC and Active Sports Distribution, alleges as follows:

### THE PARTIES

1. Stokely-Van Camp, Inc. ("Stokely-Van Camp") is an Indiana corporation with a place of business at 555 West Monroe Street, Chicago, Illinois 60661.

2. DuraCap Labs, LLC ("DuraCap Labs") was a limited liability company organized under the laws of Georgia until being dissolved on or about August 27, 2014, with a business address of 6250 McDonough Drive, Norcross, Georgia 30093.

3. On information and belief, Active Sports Distribution ("Active Sports") is a privately held company with a business address of 6080 McDonough Drive, Norcross, Georgia 30093, that is affiliated with DuraCap Labs and distributes its products.

### JURISDICTION AND VENUE

4. This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois statutory and common law.

5. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 (a) and (b) in that it involves an action arising under the Lanham Act. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the activities giving rise to the claims alleged herein occurred in this District.

## NATURE OF THE CASE

7. Stokely-Van Camp brings this action in response to Defendants' infringing conduct and breach of their agreement to cease such infringement. Stokely-Van Camp seeks to protect the enormous goodwill and consumer recognition of its famous GATORADE family of trademarks, established over many decades of use and promotion of the marks in connection with beverages in ready-to-drink and powder form, nutrition-fortified food and drink items, and many other goods. As set forth more fully below, without Stokely-Van Camp's authorization or consent, and with constructive and actual knowledge of Stokely-Van Camp's longstanding rights in the GATORADE family of marks, Defendants began producing, selling and promoting dietary and nutritional supplements under the designation HATERADE in combination with a lightning bolt design. Defendants subsequently agreed to rebrand and re-label their goods but yet continue to market and promote products bearing both HATERADE and the lightning bolt design. Defendants' conduct is likely to dilute Stokely-Van Camp's famous GATORADE marks by blurring and by tarnishment. Defendants' conduct is also likely to cause members of the public and trade to believe incorrectly that Defendants' goods are authorized by, sponsored by or affiliated with Stokely-Van Camp and its GATORADE brand.

## COMMON ALLEGATIONS

### Stokely-Van Camp's GATORADE Brand and Trademarks

8. For many decades, and long before the acts of Defendants alleged herein, Stokely-Van Camp has been engaged, inter alia, in the manufacturing, marketing, distributing, and selling throughout the United States of a variety of food, beverage and nutritional products.

9. The first GATORADE beverage was developed in 1967 by physicians and coaches at the University of Florida to help its football players withstand the extreme heat during games. Since then, Stokely-Van Camp has developed, manufactured, marketed, distributed and sold fruit-flavored beverages, in ready-to-drink and powdered form, under the trademark GATORADE. These beverages have been targeted to consumers involved in all types of sports and fitness activities to satisfy their hydration and energy needs.

10. In addition, for many years, and long before the acts of Defendant alleged herein, Stokely-Van Camp has developed, manufactured, marketed, distributed and sold a variety of food products, including nutritional supplements and vitamin-fortified beverages, protein shakes and food bars and chews, all of which are targeted to athletes and their nutritional needs, under the GATORADE mark.

11. For decades, Stokely-Van Camp has devoted tremendous resources, time and effort, including hundreds of millions of dollars, to marketing, promoting and distributing its GATORADE beverages and food products. Stokely-Van Camp advertises GATORADE products in all types of media, in regular campaigns and in connection with high-profile sporting and athletic events such as the Super Bowl, the World Series, the National Basketball Association playoffs and more. GATORADE is the official sports drink of the National Football League, the National Basketball Association, Major League Baseball, the National Hockey

League, Major League Soccer and other organizations.

12. Stokely-Van Camp's successful promotion and the high quality of its GATORADE products have resulted in the sale of many billions of dollars of products under its GATORADE brand. Stokely-Van Camp has thus built enormous consumer goodwill and recognition in the GATORADE brand, which is among Stokely-Van Camp's most valuable assets. GATORADE is regularly named among the top ten brands of Forbes magazine's 40 most valuable sports brands and has been listed among Forbes' top 100 most valuable brands in the world across all market sectors.

13. Drawing upon the renown and popularity of the GATORADE mark, and to further develop and promote its GATORADE brand, and long before the acts of Applicant alleged herein, Stokely-Van Camp expanded its line of GATORADE products to include a wide variety of other goods, including pens, decals, playing cards, umbrellas, tote bags, garment bags, duffel bags, luggage, briefcases, fanny packs, portable beverage dispensers, portable ice chests for food and beverages, portable beverage coolers, glass and plastic beverage ware, paper cups, insulating sleeve holders, plastic beverage bottles and a wide variety of apparel items and sporting goods.

14. To protect its hard-earned goodwill symbolized by the GATORADE mark, Stokely-Van Camp has long sought, obtained and maintained federal trademark registrations for the mark GATORADE, used by itself or with other terms, and the distinctive lightning bolt design for use with soft drinks, nutritional supplements, food bars and chews and other products. These registered marks form a strong family of marks based on GATORADE (the "Family of GATORADE Marks"), including:

| Mark | Goods | Registration No. | Registration Date |
|---|---|---|---|
| GATORADE | Fruit flavored soft drink and powder for making flavored sports drink | 848,245 | April 30, 1968 |
| Lightning Bolt Design | Thirst quenching soft drink and powder and concentrate for making the same | 1,030,972 | January 20, 1976 |
| GATORADE | Pens, decals, playing cards, beverage coolers, glass beverage ware, paper cups, insulated glass holders, plastic beverage bottles, sport shirts, hats, sweatbands | 1,229,701 | March 8, 1983 |
| GATORADE | Watches, tote bags, Garment bags, duffle bags, portable beverage dispensers and ice chests, towels, jackets, pullovers, shorts, sweaters, visors, Sweatpants, sweatshirts, sweat suits, t-shirts, golf bags, golf balls and golf head covers | 1,605,457 | July 10, 1990 |

| **Mark** | **Goods** | **Registration No.** | **Registration Date** |
|---|---|---|---|
| GATORADE | Coolers | 1,905,547 | July 18, 1995 |
| GATORADE | Grain-based food bars | 2,444,436 | April 17, 2001 |
| Lightning Bolt Design | Grain-based food bars | 2,444,437 | April 17, 2001 |
| GATORADE and Design | Non-alcoholic, non-carbonated sports drinks | 2,856,121 | June 22, 2004 |
| GATORADE and Design | Umbrellas, tote bags, garment bags for travel, duffel bags, luggage, briefcases, and fanny packs; Portable beverage dispensers, portable ice chests for food and beverages, portable beverage coolers, glass and plastic beverageware, paper cups, insulating sleeve holders made of glass for holding beverage cans and plastic beverage bottles sold empty; Sport shirts, hats, sweatbands, jackets, pullovers, shorts, shirts, sweaters, sweatpants, sweatshirts, sweatshorts, sweatsuits, t-shirts, and visors; beach balls, golf bags, golf balls, head covers for golf clubs; and other sports | 3,181,037 | December 5, 2006 |

6

| Mark | Goods | Registration No. | Registration Date |
|---|---|---|---|
| | apparatus, namely baseballs, soccer balls, basketballs and hockey pucks | | |
| GATORADE SPORTS SCIENCE INSTITUTE and Design | Educational services, namely, classes, seminars, conferences and workshops in the field of exercise, science and sports medicine | 3,454,836 | June 24, 2008 |
| GATORADE and G Design | Non-alcoholic, non-carbonated fruit flavored beverages | 3,659,283 | July 21, 2009 |
| GATORADE X-FACTOR | Non-alcoholic vitamin and/or nutrient enhanced fruit flavored beverages | 3,661,923 | July 28, 2009 |
| Lightning Bolt Design | Non-alcoholic vitamin and/or nutrient enhanced fruit-flavored beverages | 3,677,686 | September 1, 2009 |
| GATORADE | Non-alcoholic vitamin and/or nutrient enhanced fruit flavored beverages | 3,681,221 | September 8, 2009 |
| GATORADE PERFORM | Non-alcoholic, non-carbonated fruit flavored beverages | 3,831,889 | August 10, 2010 |
| GATORADE PRIME | Fruit flavored beverages, namely, non-alcoholic fruit flavored | 3,838,892 | August 24, 2010 |

7

| Mark | Goods | Registration No. | Registration Date |
|---|---|---|---|
| | beverages containing vitamins and/or nutrients and/or protein | | |
| GATORADE RECOVER | Non-alcoholic, fruit-flavored beverages containing proteins | 3,874,932 | November 9, 2010 |
| GATORADE and Design **GATORADE** | Portable beverage dispensers and ice chests for food and beverages; paper cups and plastic beverage bottles | 3,881,115 | November 23, 2010 |
| G and Design | Non-alcoholic, non-carbonated fruit flavored beverages | 3,904,392 | January 11, 2011 |
| GATORADE SPORTS SCIENCE INSTITUTE & Design | Non-alcoholic, non-carbonated fruit flavored beverages | 4,077,266 | December 27, 2011 |
| Lightning Bolt Design | Non-alcoholic, non-carbonated fruit flavored beverages | 4,280,408 | January 22, 2013 |
| GATORADE PRIME | Snack food chews made primarily from corn syrup, enhanced with vitamins, for consumption before and during athletic activities | 4,428,963 | November 5, 2013 |

8

| **Mark** | **Goods** | **Registration No.** | **Registration Date** |
|---|---|---|---|
| GATORADE RECOVER | Soy-based food bars; whey-based food bars | 4,557,300 | June 24, 2014 |

Printouts from the U.S. Trademark Office's Trademark Status and Document Retrieval database showing the current status and owner of these registrations are attached hereto collectively as Exhibit A.

### Defendants' Adoption and Use of the Designation HATERADE

15. On September 11, 2014, long after Stokely-Van Camp began using its GATORADE mark and its Family of GATORADE Marks, and long after the GATORADE mark and the Family of GATORADE Marks became famous, DuraCap Labs filed an application to register the term HATERADE with the U.S. Patent and Trademark Office (*See* Application Serial No. 86/391,703) based upon its intent to use the term in connection with "dietary and nutritional supplements" in International Class 5. The application was published for opposition on December 16, 2014.

16. On or about November 1, 2014, Defendants began selling, distributing and promoting dietary and nutritional supplements in powder form under the designation HATERADE accompanied by a lightning bolt design as depicted:



17. When Stokely-Van Camp became aware of Defendants' trademark application and its use of the HATERADE designation in connection with dietary and nutritional supplements, it notified Defendants in writing of its longstanding use of and rights in its GATORADE Family of Marks, and informed Defendants of its position that their use of the designation HATERADE and the lightning bolt design dilutes the GATORADE Family of Marks and is likely to cause consumer confusion. To avoid litigation over such use, Stokely-Van Camp requested that Defendants cease all use of the term HATERADE, the lightning bolt design, and any other designation confusingly similar to the GATORADE Family of Marks in connection with dietary and nutritional supplements. Stokely-Van Camp also requested that DuraCap Labs withdraw its trademark application for the term HATERADE. Seeking an amicable resolution, Stokely-Van Camp offered to work with Defendants to determine a reasonable period of time for Defendants to phase out their use of the HATERADE designation and exhaust their existing supply of products.

18. On March 21, 2015, Defendants represented that they would cease, and in fact had ceased, using the lightning bolt design in connection with their dietary and nutritional supplement, although they would not agree to comply with Stokely-Van Camp's other requests.

19. On March 25, 2015, Stokely-Van Camp notified Defendants in writing of its continued objection to their use of and efforts to obtain a federal trademark registration for the term HATERADE, and repeated its offer of an amicable resolution and a phase-out period. Defendants did not respond.

20. On April 15, 2015, Stokely-Van Camp filed a Notice of Opposition contesting DuraCap Labs' federal trademark registration for the term HATERADE; *see* Trademark Trial and Appeal Board, Opposition No. 91221527.

21. On April 16, 2015, DuraCap Labs withdrew its trademark application rather than defending the opposition proceeding. As a result, on April 24, 2015, the Trademark Trial and Appeal Board sustained Stokely-Van Camp's opposition, entered judgment in the opposition and refused DuraCap Labs' application.

22. Thereafter, Stokely-Van Camp notified Defendants in writing of its continuing objection to their use of the designation HATERADE and repeated its offer of an amicable resolution and a phase-out period.

23. After extensive discussions, Defendants agreed to permanently cease using the designation HATERADE, as well as the lightning bolt design. Defendants further agreed to rebrand and re-label their products and to remove all uses of HATERADE and the lightning bolt design from their website and other promotional materials.

24. Notwithstanding the foregoing, and in breach of their agreement, Defendants continue to sell, distribute and promote dietary and nutritional supplements in powder form under the designation HATERADE accompanied by the lightning bolt design as depicted above.

25. Defendants' use of the designation HATERADE and the lightning bolt design dilutes Stokely-Van Camp's GATORADE Family of Marks and is likely to confuse members of the public in that it will lead the public to believe incorrectly that Stokely-Van Camp is the source of, has endorsed or approved, or is somehow legitimately associated with Defendants or their goods, thereby injuring the goodwill Stokely-Van Camp has built in the GATORADE Family of Marks.

26. As a result of Defendants' conduct, Stokely-Van Camp has suffered and will continue to suffer irreparable harm constituting an injury for which it has no adequate remedy at law. Stokely-Van Camp will continue to suffer irreparable harm unless this Court enjoins

Defendants' conduct.

27. Because of Defendants' refusal to cease their damaging conduct and breach of their agreement to do so, Stokely-Van Camp has been forced to bring this action to protect its valuable rights in the GATORADE Family of Marks and to redress the injury it has suffered as a result of Defendants' conduct.

## COUNT I

### DILUTION OF A FAMOUS MARK
### (15 U.S.C. § 1125(c))

28. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 27 of this Complaint.

29. Through Stokely-Van Camp's extensive, continuous and successful use and promotion of its GATORADE mark and its Family of GATORADE Marks, the general consuming public has come to widely recognize the GATORADE mark, the distinctive lightning bolt design and the Family of GATORADE Marks as being uniquely associated with Stokely-Van Camp and its products, particularly beverages, nutritional supplements, vitamin-fortified beverages, protein shakes, and food bars and chews. As a result, the marks are widely recognized by the general consuming public of the United States as a designation of source of Stokely-Van Camp's goods. Accordingly, the marks are famous within the meaning of 15 U.S.C. § 1125(c)(2).

30. The term "hater" is a derogatory term used colloquially to refer to a person or group who expresses hatred in public forums, someone who hates a specified person or thing, or a negative or critical person. *See* representative definitions of "hater," attached hereto as Exhibit B. The term "haterade" is a slang term that invokes and trades on the fame of the GATORADE mark and the Family of GATORADE Marks. It is formed by combining "hater" and

12

GATORADE to refer to a fictional or metaphorical beverage consumed by hateful, jealous or angry people. *See* representative definitions of "haterade" attached hereto as Exhibit C.

31. Defendants' use of the similar designation HATERADE, with or without the lightning bolt design, in connection with dietary and nutritional supplements, brings to mind the GATORADE mark and the Family of GATORADE Marks, and associates them with the colloquial, derogatory term "hater," which is contrary to the positive, energetic and healthy image Stokely-Van Camp has established for its GATORADE mark and the Family of GATORADE Marks, and which harms the reputation of the GATORADE mark and the Family of GATORADE Marks.

32. Defendants' use of the similar designation HATERADE, with or without the lightning bolt design, in connection with dietary and nutritional supplements, also impairs the distinctiveness of the GATORADE mark and Family of GATORADE Marks and thereby lessens their capacity to identify and distinguish Stokely-Van Camp's goods.

33. Defendants' use of the designation HATERADE, with or without the lightning bolt design, in connection with dietary and nutritional supplements, is therefore likely to cause dilution by blurring or tarnishment of the famous GATORADE mark and Family of GATORADE Marks in violation of 15 U.S.C. § 1125(c).

## COUNT II

### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1)(a))

34. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 33 of this Complaint.

35. Pursuant to 15 U.S.C. § 1072, Defendants had constructive knowledge of Stokely-Van Camp's longstanding ownership of and rights in its federally registered GATORADE mark

and GATORADE Family of Marks prior to Defendants' unauthorized use of the designation HATERADE for dietary and nutritional supplements.

36. On information and belief, Defendants also had actual knowledge of Stokely-Van Camp's longstanding ownership of and rights in its federally registered GATORADE mark and GATORADE Family of Marks prior to Defendants' unauthorized use of the designation HATERADE for dietary and nutritional supplements.

37. Defendants thus have deliberately and willfully used the designation HATERADE to trade upon the tremendous goodwill, widespread consumer recognition and selling power established by Stokely-Van Camp in its GATORADE brand.

38. Stokely-Van Camp has not consented to, and has in fact repeatedly objected to, Defendants' use of the designation HATERADE in connection with dietary and nutritional supplements.

39. Defendants' unauthorized use of the HATERADE mark in connection with dietary and nutritional supplements is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Stokely-Van Camp and its GATORADE products in violation of 15 U.S.C. § 1114.

40. The intentional nature of Defendants' conduct renders this an exceptional case under 15 U.S.C. § 1117(a).

41. As a result of Defendants' conduct, Stokely-Van Camp has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Stokely-Van Camp will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT III

### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

42. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 41 of this Complaint.

43. Defendants have deliberately and willfully used the HATERADE mark to trade on the tremendous goodwill, widespread consumer recognition and selling power established by Stokely-Van Camp in its GATORADE brand, and also to confuse consumers as to the affiliation of Defendants' goods with Stokely-Van Camp.

44. Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Stokely-Van Camp, and as to the origin, sponsorship or approval of Defendants and their goods, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

45. Defendants' conduct has also deprived and will continue to impair Stokely-Van Camp's ability to control the consumer perception of its goods marketed under its GATORADE mark by allowing Defendants to sell and promote potentially low-quality or ineffective products that consumers perceive to be affiliated with the GATORADE brand.

46. The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. § 1117(a).

47. As a result of Defendants' conduct, Stokely-Van Camp has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Stokely-Van Camp will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

15

## COUNT IV

## VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS 510/1 et seq.)

48. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 47 of this Complaint.

49. Defendants' actions complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' goods. Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of their goods with Stokely-Van Camp and the GATORADE brand.

50. The intentional nature of the aforementioned acts renders Defendants' conduct as willful deceptive trade practices in violation of 815 ILCS 510/2(a)(2) - (a)(3).

51. As a result of Defendants' conduct, Stokely-Van Camp has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Stokely-Van Camp will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT V

## UNFAIR COMPETITION

52. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 51 of this Complaint.

53. Defendants' conduct constitutes unfair competition in that such conduct: (a) is likely to cause members of the public and trade, and actual or potential customers of Stokely-Van Camp, to believe that Defendants and their goods are in some way sponsored by, affiliated with or otherwise connected to Stokely-Van Camp's goods and the GATORADE brand, when in

fact they are not; and (b) enables Defendants to trade on and deprive Stokely-Van Camp of the benefit of the goodwill in its GATORADE brand and mark.

54. Defendants' acts described above constitute unfair competition in violation of Illinois common law as the acts amount to an intentional misappropriation of both Stokely-Van Camp's GATORADE brand and mark and Stokely-Van Camp's reputation and commercial advantage. As a result of their wrongful actions, Defendants will be unjustly enriched.

55. As a result of Defendants' conduct, Stokely-Van Camp has suffered substantial damage and irreparable harm constituting an injury for which it has no adequate remedy at law. Stokely-Van Camp will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## COUNT VI

### BREACH OF CONTRACT

56. Stokely-Van Camp realleges and incorporates herein paragraphs 1 through 55 of this Complaint.

57. Stokely-Van Camp and Defendants reached an agreement pursuant to which DuraCap Labs and Active Sports Distribution agreed to permanently cease, and refrain from adopting in the future, the designations HATERADE and the lightning bolt design in connection with nutritional supplements, sports drinks or similar products. In return, provided that Defendants promptly took good-faith steps to cease all use of the term HATERADE and the associated lightning bolt design, Stokely-Van Camp agreed to release and discharge Defendants from any or all claims it may have relating in any way to their use of the term HATERADE and the associated lightning bolt design.

58. Stokely-Van Camp has complied with all its obligations under the aforesaid agreement.

59. Defendants have breached their obligations under the aforesaid agreement and continue to market and promote products under the designation HATERADE on their website.

## PRAYER FOR RELIEF

WHEREFORE, as to all Counts of this Complaint, Stokely-Van Camp requests that this Court enter a judgment in its favor and against Defendants as follows:

A. Preliminarily and permanently enjoining and restraining Defendants and any of their subsidiaries, licensees, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents and any other persons or entities acting on behalf of Defendants or with Defendants' authority, from:

(1) using, selling, distributing, offering for sale, holding out for sale, advertising or promoting any goods under or in connection with any trade name, trademark, service mark or Internet domain name that is composed in whole or in part of the term HATERADE, a lightning bolt design, or any other designation confusingly similar to Stokely-Van Camp's GATORADE Family of Marks; or

(2) doing any act or thing that is likely to induce the belief that Defendants' goods are in some way connected with Stokely-Van Camp's GATORADE Family of Marks or business, or that is likely to injure or damage Stokely-Van Camp's GATORADE Family of Marks or business; and

B. Requiring that Defendants be ordered to recall from the channels of trade all products, packaging, advertising and promotional material sold or distributed by Defendants or their affiliates that bear the designation HATERADE, a lightning bolt design, or any other term or design confusingly similar to Stokely-Van Camp's GATORADE Family of Marks;

C. Requiring Defendants to reimburse Stokely-Van Camp for all damages it has suffered by reason of Defendants' acts complained of herein and remit to Stokely-Van Camp exemplary and treble damages as provided for in 15 U.S.C. § 1117 and at common law;

D. Finding that this case constitutes an exceptional case under 15 U.S.C. § 1117 and an incidence of willful deception under 815 ILCS 510/3, and awarding Stokely-Van Camp its

reasonable attorneys' fees and disbursements accordingly;

E.    Requiring that Defendants deliver up and destroy all labels, signs, prints, packages, wrappers, receptacles and advertisements in its possession bearing the designation HATERADE or a lightning bolt design, and all plates and other means of making the same, pursuant to 15 U.S.C. § 1118; and

F.    Requiring that Stokely-Van Camp be awarded such other and further relief as this Court may deem equitable.

Respectfully submitted,

Stokely-Van Camp, Inc.

By: /Antony J. McShane/
One of Its Attorneys

Antony J. McShane
Andrew S. Fraker
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
(312) 269-8000

Dated: September 17, 2015

21306871.6